Steve **FELDLEIT** and Rose **Feldleit, Plaintiffs,**

v.

The **LONG ISLAND RAIL ROAD, Martin Saggese, Sheila Keller and Guy Tower, Defendants.**

No. CV–89–0779.

United States District Court, E.D. New York.

Oct. 24, 1989.

Samuel J. Gottlieb, New York City, for plaintiffs.

Thomas M. Taranto, Richard J. Berka, Roger J. Schiera, Jamaica, N.Y., for defendants.

## MEMORANDUM AND ORDER

WEINSTEIN, District Judge.

Plaintiffs Steve Feldleit and his wife Rose Feldleit, citizens of Pennsylvania, sue his former employer, the Long Island Rail Road, and three individual employees of the LIRR residing in New York. Mr. Feldleit claims to have been falsely accused of, and wrongly disciplined for, leaving an ob-

scene phone message on his female supervisor's home answering machine. Plaintiffs seek compensatory and punitive damages under the Railway Labor Act, 45 U.S.C. §§ 151 et seq., and the Federal Employers Liability Act, 45 U.S.C. §§ 51 et seq., as well as a number of state tort and contract theories. At issue is whether the employer, in its effort to protect a female employee from job-related sexual harassment, breached its duty of fair treatment to a male employee.

Defendants move to dismiss pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure on the grounds that this court lacks subject matter jurisdiction over the RLA dispute because of preemption and over the FELA claims because of the lack of a cognizable claim. As demonstrated below, no viable federal claim has been pleaded.

Preemption and lack of any basis thus far demonstrated in fact or law for the state claims appears to require granting judgment dismissing the state law contentions. Rule 12(b) of the Federal Rules of Civil Procedure permits the court to treat a 12(b)(6) motion as one for summary judgment, but requires that plaintiff be permitted to support the complaint by enhancing the record. See also Fed.R.Civ.P. 56(e), 56(f) (allowing supplementation of the record). While plaintiff and defendants have submitted substantial documentary evidence on the 12(b) motion, it may be that, spurred by the prospect of a dismissal, plaintiff may be able to produce more persuasive material. Accordingly, unless within thirty days, plaintiff shows good cause, judgment will be entered dismissing the complaint.

## I. Facts

Feldleit had been employed for eight years by the LIRR as a senior financial analyst. His immediate supervisor was defendant Sheila Keller. Keller reported directly to vice president of management and financial services, defendant Martin Saggese.

On April 5, 1988, plaintiff was summoned to the office of Saggese, where he was informed that Keller had received a sexually explicit and insulting telephone message on her home answering machine on or about March 29 and had identified the voice as plaintiff's. The tape recorded message was played for Feldleit. He denied responsibility.

Immediately, plaintiff was taken by LIRR police officers to a conference room visible to his co-workers. He was read his Miranda rights and asked to make a statement. Plaintiff refused. Saggese and the LIRR police then insisted that he leave the premises. No criminal charge was ever prosecuted.

Subsequently plaintiff was accused of insubordinate, disrespectful and sexually harassing conduct toward his supervisor. He was suspended with pay pending an internal investigation. He claims that the reason for his suspension was made known to his colleagues and co-workers.

In accordance with the provisions established by the collective bargaining agreement between the LIRR and plaintiff's union, a company trial date of April 28, 1988 was set. Defendant Guy Tower, the LIRR's manager of financial planning, informed plaintiff in writing of the charge, the date of his trial and his right to have a "duly accredited representative" present. This letter also notified plaintiff that he was entitled to produce his own witnesses and to cross examine any witnesses produced by the employer.

Four days before the trial was to take place Feldleit was informed by letter that it had been cancelled. Presumably the employer's internal investigation, which included lie detector and voice comparison tests, failed to substantiate the charges.

Accompanied by Frederick Gerrain, the local chairman of the union, plaintiff met with Saggese and asked to be returned to his old job. Saggese denied his request and instead offered plaintiff a job in the payroll department at no loss in pay. Plaintiff was recalled from administrative leave and began his new job on May 18, 1988. He claims that, as a condition to retaining his employment with the LIRR,

he was forced to accept a demotion to a job for which he was overqualified.

Feldleit subsequently asked his union to bring a grievance against the LIRR on the basis of both the false charge and his subsequent "demotion." He discussed the "entire incident at length" with union chairman Gerrain. Gerrain initially suggested that plaintiff retain an attorney and pursue the matter through the courts. Later the union informed Feldleit that it was investigating the matter. On August 12, 1988, Gerrain wrote to Saggese, detailing plaintiff's complaints, and requesting that a meeting be held to discuss the alleged demotion. The letter suggested that, under the circumstances, it might have been more appropriate to transfer Keller, rather than plaintiff.

Plaintiff claims that his attempt to prod the union to take further action met with no effective response. Eventually he went over Gerrain's head in the union. The following day Gerrain called plaintiff and told him that the union had decided not to take any further action and considered the matter closed.

On November 2, 1988, after three-and-a-half months in his new position, plaintiff resigned from the LIRR. He claims to have taken this step because of distress over his suspension and "demotion."

Plaintiffs have alleged at least eight state law claims against the LIRR and various combinations of the individual defendants including: (1) false arrest, (2) defamation, (3) intentional infliction of emotional harm, (4) conspiracy to defame, (5) breach of contract, (6) tortious interference with contract, (7) loss of consortium, and (8) invasion of privacy and violation of civil rights under state law.

## II. Railway Labor Act's Grant of Exclusive Jurisdiction

The statutory bases for what have become known as minor disputes under the RLA are found in 45 U.S.C. § 152 Sixth and § 153 First (i). These sections set forth conference and compulsory arbitration procedures for resolution of disputes arising "out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." *Id.* at § 152 Sixth.

■ Minor disputes in the railroad industry are subject to binding and compulsory arbitration before either a national adjustment board, *id.* at § 153 First, or before an adjustment board established by both the employer and the union representing the employee. *Id.* at § 153 Second. These adjustment boards have exclusive jurisdiction over such disputes. *Consolidated Rail Corp. v. Railway Labor Executives,* —— U.S. ——, 109 S.Ct. 2477, 2480–81, 105 L.Ed.2d 250 (1989).

Congress sought to "promote stability in labor-management relations" in railroads by providing for "prompt, orderly and final settlement of grievances that arise daily between employees and carriers regarding ... working conditions." *Atchison, Topeka and Santa Fe Ry. v. Buell,* 480 U.S. 557, 563 n. 9, 107 S.Ct. 1410, 1414 n. 9, 94 L.Ed.2d 563 (1987) (citations omitted). The jurisdiction of the federal courts over minor disputes is limited to narrow judicial review of the arbitral decision. *Consolidated Rail,* 109 S.Ct. at 2481; *Buell,* 480 U.S. at 563, 107 S.Ct. at 1414 (citation omitted); *International Bhd. Teamsters v. Pan American World Airways,* 716 F.Supp. 726, 729 (E.D.N.Y.1989) ("Except in unusual circumstances, a district court has no jurisdiction over minor disputes.").

Minor disputes relate to the "meaning or proper application of a particular provision" in an existing collective bargaining agreement. *Elgin, Joliet & Eastern Ry. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1290, 89 L.Ed. 1886, 1894 (1945). In its most recent attempt to distinguish minor from major disputes, the Court defined the former as those labor disputes in which the employer "asserts a contractual right to take the contested action" where that action "is arguably justified by the terms of the parties' collective-bargaining agreement." *Consolidated Rail Corp. v. Railway Labor Executives,* —— U.S. ——, 109 S.Ct. 2477, 2482, 105 L.Ed.2d 250 (1989). If the dispute is minor, either party is "free to act in accord-

ance with its own interpretation of the disputed contractual provision pending resolution of the dispute by the board of adjustment." *Teamsters v. Pan American World Airways*, 716 F.Supp. 726, 729–30 (E.D.N.Y.1989) (citing *CSX Transp., Inc. v. United Transp. Union*, 879 F.2d 990, 997 (2d Cir.1989)).

■ An obscene phone call from an employee to a supervisor's house—or, for that matter, from one co-worker to another—undeniably constitutes improper work-related conduct. The effects of such disrespectful behavior would almost certainly spill over into the workplace, creating the kind of disciplinary problem that is resolvable under the provisions of the collective bargaining agreement between the LIRR and the union. Failure to take prompt action to protect a female employee from such insulting conduct could not only disrupt harmonious labor-management relations, but could lead to legal action against the company by the harassed female employee.

In response to the complaint by Keller, the employer properly suspended plaintiff, with pay, pending an internal investigation. When a "major offense" has been committed, the labor union agreement allows an employee suspected by the LIRR of being guilty to be "held out of service pending trial" if that employee's retention could be "detrimental to [the employee], another person, or the Carrier." Agreement at Rule 23(b). An obscene phone message is arguably a "major offense." Thus, the LIRR was arguably acting within its contractual rights when it put plaintiff on administrative leave.

During the course of the investigation the employer accorded Feldleit all of the procedural safeguards provided by the collective bargaining agreement. *Id.* at Rule 23(d). These included advance written notification of the charges, the scheduled date of the trial, and the fact that plaintiff was entitled to a representative at the trial. At no time was he removed from the payroll.

Plaintiff claims that the LIRR had no contractual right under the terms of the Agreement to have him "arrested" by uniformed LIRR police in full view of his co-workers for an offense that took place off the jobsite. In making this argument, he relies upon *Merola v. National Railroad Passenger Corp.*, 683 F.Supp. 935, 938 (S.D.N.Y.1988). In that case Anthony Merola, an employee of the Amtrak police force, was arrested, booked and retained in custody by the New York City Police on charges of unlawfully disposing of a firearm in violation of New York penal law.

After an internal investigation and hearing were conducted, Merola was dismissed from his job. Ultimately the criminal charges against him were dismissed. Merola subsequently sued his employer and various coworkers for false arrest and imprisonment, malicious prosecution and illegal wiretapping. The district court held that the RLA did not preempt Merola's claims because those claims did not involve questions that were "basically contractual in nature." *Id.* at 939.

There is, however, no indication in this case that Feldleit was "arrested." Although plaintiff was read his *Miranda* rights by the uniformed LIRR police, he was allowed to leave the employer's premises alone after refusing to give a statement. He was then placed on administrative leave with pay. Eventually he was allowed to work, albeit in a different job. Unlike Merola, plaintiff was never charged with violating a state law, much less booked at a police station, photographed, fingerprinted or subjected to the other procedures that commonly accompany an arrest.

Because an off-site obscene phone call could create the kind of on-site disciplinary problem contemplated by the Agreement, the employer's action was "arguably justified by the terms of the parties' collective-bargaining agreement." *Consolidated Rail Corp. v. Railway Labor Executives*, —— U.S. ——, 109 S.Ct. 2477, 2482, 105 L.Ed.2d 250 (1989). The dispute is properly characterized as a minor dispute subject to the exclusive jurisdiction of the adjustment boards as provided by the RLA. *See Majors v. U.S. Air, Inc.*, 525 F.Supp. 853, 857 (D.Md.1981) (false imprisonment and defamation claims preempted by RLA where

company's investigation of suspected theft "bears a not insubstantial relationship to the labor contract").

Plaintiff's claims for breach of contract and tortious interference with contract are preempted by the RLA. These claims are dismissed for lack of subject matter jurisdiction.

### III. Exhaustion of Remedies and the Union's Duty of Fair Representation

■ Before a minor dispute is submitted to an adjustment board, an attempt must be made to settle it through the railroad's internal grievance procedures. 45 U.S.C. § 184. *See also Atchison, Topeka and Santa Fe Ry. v. Buell,* 480 U.S. 557, 563, 107 S.Ct. 1410, 1414, 94 L.Ed.2d 563 (1987). Plaintiff claims that he was unable to fulfill this requirement to exhaust internal remedies because the union "totally breached" its responsibility to present or pursue his grievance. Although he did not sue the union, plaintiff bases his right to seek judicial intervention on a line of cases that begins with *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). These cases allow employees to bypass the dispute-resolution procedures established by federal labor laws and, under limited circumstances, to seek judicial redress against both an employer and union.

In *Vaca* the Supreme Court decided that the exhaustion of remedies requirement is subject to exceptions where a doctrinaire application would defeat the underlying policies served by the federal labor laws. 386 U.S. at 186–87, 87 S.Ct. at 914–15. These exceptions, which include a union's breach of its duty of fair representation, have been applied to RLA cases. *See Glover v. St. Louis–San Francisco Ry.,* 393 U.S. 324, 329–30, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969); *Schum v. South Buffalo Ry.,* 496 F.2d 328 (2d Cir.1974).

Since *Vaca,* both federal and state courts have entertained what have become known as hybrid suits, in which the employee sues not only the employer for a breach of the collective bargaining agreement, but also the union for breaching its duty of fair representation. *See, e.g., Bowen v. United States Postal Serv.,* 459 U.S. 212, 103 S.Ct.

588, 74 L.Ed.2d 402 (1983). While it is not required that the union be joined as a co-defendant, *Vaca,* 386 U.S. at 187, 87 S.Ct. at 915, a plaintiff must still prove that the union actually breached its duty of fair representation.

The Supreme Court has offered little guidance on when a union's failure to pursue a grievance to arbitration constitutes a breach of its duty of fair representation. *Vaca* itself notes only that a union can not "arbitrarily" ignore a meritorious grievance or process it in a "perfunctory fashion." *Id.* at 191, 87 S.Ct. at 917. The Second Circuit has recently held that two elements must be proven for a breach of duty of fair representation suit: first, that the union's conduct was " 'arbitrary, discriminatory or in bad faith' ", and second, that it " 'seriously undermine[d] the arbitral process.' " *Barr v. United Parcel Serv., Inc.,* 868 F.2d 36, 43 (2d Cir.1989) (citations omitted).

Plaintiff has not shown that the union acted in an impermissibly arbitrary or discriminatory manner. Nor is there any evidence that the union exercised bad faith as in *Schum v. South Buffalo Railway,* 496 F.2d 328 (2d Cir.1974), a case upon which plaintiff relies at great length. Unlike the employee in *Schum,* Feldleit did not receive and rely upon false assurances made by the union that his grievance was being processed administratively.

Moreover, there is ample evidence that union officials kept abreast of Feldleit's grievance and did attempt to aid and advise him. Plaintiff apparently sought the counsel of an attorney at the suggestion of Gerrain, the local union chairman, even before the charges against him were dropped. Gerrain also accompanied plaintiff to the May 12 meeting with Saggese in which Saggese told plaintiff that he could return from administrative leave and take a job in the payroll department. In August Gerrain wrote to Saggese detailing Feldleit's grievances and requesting a meeting. He followed up his request with a second letter a month and a half later.

Absent a showing of arbitrariness or bad faith, a court should not second-guess the

union's decision not to pursue plaintiff's grievance. *See Cook v. Pan American World Airways, Inc.*, 771 F.2d 635, 645 (2d Cir.1985) (proof of mere negligence or errors of judgment insufficient to prove breach of duty of fair representation), *cert. denied*, 474 U.S. 1109, 106 S.Ct. 895, 88 L.Ed.2d 929 (1986); *Campbell v. Pan American World Airways, Inc.*, 668 F.Supp. 139, 143 (E.D.N.Y.1987) (union inaction resulting in unfairness does not of itself constitute breach of duty of fair representation); *Capobianco v. Brink's, Inc.*, 543 F.Supp. 971, 975 (E.D.N.Y.1982) (to prove breach, employee must show substantial evidence of fraud, deceitful action, dishonest conduct, hostile discrimination, arbitrary or irrational behavior or conduct in bad faith), *aff'd mem.*, 722 F.2d 727 (2d Cir.1983).

While the union may not have been as diligent in pursuing its efforts on behalf of plaintiff as he might have desired, there is no showing that it acted arbitrarily or in bad faith. The result it obtained for him—a job at the same pay—seems to have been appropriate; putting him back in his former position under a supervisor who thought she had been insulted by him would not have been calculated to achieve workplace harmony.

Feldleit has failed to show that the union breached its duty of fair representation. Plaintiff is not excused from the RLA's requirement that he exhaust internal remedies before seeking judicial intervention.

IV. Exceptions to the Grant of Exclusive Jurisdiction

In *Farmer v. United Brotherhood of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), the Supreme Court carved out an exception to the preemptive effect of the federal labor laws. Writing for the Court, Justice Powell explained that state claims were not preempted where the action complained of "was a merely peripheral concern of the Labor Management Relations Act ... [or] touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." *Id.* at 296–97, 97 S.Ct. at 1061.

The *Farmer* Court established a three-part test for determining whether a state law claim was preempted by federal labor laws. First, the regulated conduct must be unprotected under the labor laws. *Id.* at 298–99, 97 S.Ct. at 1062–63. Second, there must be an overriding state interest in preventing the conduct. *Id.* at 298, 97 S.Ct. at 1062. Third, state and federal standards of conduct must be sufficiently independent so that there is little risk of state interference with federal labor policy. *Id.* at 297, 305, 97 S.Ct. at 1061, 1066. *But cf. Sears, Roebuck & Co. v. San Diego Carpenters*, 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978) (allowing state claim to be entertained where defendant's conduct violates state law as to place of picketing, but is arguably protected under federal labor law). Under this test states have been allowed to apply their criminal and tort laws to prevent violence, threats of violence and other conduct that brings deeply rooted state interests into play.

A claim alleging a state tort will escape preemption "if it is unrelated to the employment dispute or is a function of the particularly abusive manner in which conduct related to the employment dispute is carried out." *Bradley v. Trans World Airlines, Inc.*, No. 85–3941, 1986 WL 20690 (E.D.N.Y., June 2, 1986) (Nickerson, J.) (preempting state action for stopping and searching defendant suspected of violating rules of employer by possessing illegal drugs at work). Both defamation and intentional infliction of emotional distress claims have escaped preemption by the National Labor Relations Act under this standard. *Farmer v. United Bhd. of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 303, 97 S.Ct. 1056, 1065, 51 L.Ed.2d 338 (1977).

The "general federal labor law preemption standards [have been used] to determine whether the RLA preempts state law." *Baldracchi v. Pratt & Whitney Aircraft Div.*, 814 F.2d 102, 106 (2d Cir. 1987). The courts have, however, traditionally found that there is broader preemption

under the RLA than under other federal labor laws. A "more stringent pattern of judicial deference has emerged." *Peterson v. Air Line Pilots Ass'n, Int'l*, 759 F.2d 1161, 1168–69 (4th Cir.) (unlike preemption under NLRA, preemption of state law claims under RLA has been more complete), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). *See also, e.g., Campbell v. Pan American World Airways, Inc.*, 668 F.Supp. 139, 145 (E.D.N.Y. 1987) (finding broader preemption under RLA than under NLRA). Stronger application of the preemption doctrine is a corollary to the RLA's unique dispute-resolution framework, which severely circumscribes the role of the courts in enforcing substantive contractual rights under the Act. *Baldracchi*, 814 F.2d at 106. *See also Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 323, 92 S.Ct. 1562, 1564, 32 L.Ed.2d 95 (1972); *Air Line Pilots Ass'n v. Texas Int'l Airlines*, 656 F.2d 16, 19–20 (2d Cir.1981).

Defamation claims which escape preemption involve published statements where actual malice, or at least knowledge or reckless disregard of truth or falsity, can be shown. *See Farmer v. United Bhd. of Carpenters and Joiners of America, Local 25*, 430 U.S. 290, 299, 97 S.Ct. 1056, 1063, 51 L.Ed.2d 338 (1977); *Linn v. United Plant Guards Local 114*, 383 U.S. 53, 65, 86 S.Ct. 657, 664, 15 L.Ed.2d 582 (1966) (adopting by analogy standard of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). *Cf. NLRB v. New York Univ. Medical Center*, 702 F.2d 284, 291 (2d Cir.1983) (pertinent standard for assessing defamatory statements in labor-management relations context is whether statements are published with knowledge of their falsity or with reckless disregard of their truth or falsity), *vacated on other grounds*, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 73 (1983).

■ Even assuming that the LIRR's charges against Feldleit were unjustified, the defamatory acts alleged by plaintiff do not rise to the level of reckless disregard, much less actual malice. *See Poppe v. Trans World Airlines, Inc.*, No. 88–3563, 1989 WL 113160 (E.D.N.Y.Sept. 14, 1989) (Raggi, J.) (state claim dismissed as preempted by RLA where allegedly defamatory statements were made pursuant to disciplinary proceedings); *Campbell v. Pan American World Airways, Inc.*, 668 F.Supp. 139 (E.D.N.Y.1987) (claims for breach of contract, intentional infliction of emotional distress, false imprisonment, and defamation dismissed as preempted by RLA); *Majors v. U.S. Air, Inc.*, 525 F.Supp. 853 (D.Md.1981) (action for false imprisonment and defamation preempted by RLA).

■ Nor was the employer's conduct sufficiently outrageous to warrant damages for emotional distress. *See Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir.1986) (finding of outrageous conduct is necessary predicate for awarding damages for emotional distress). Liability for the tort of intentional infliction of emotional distress requires "extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society...." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 741, 480 N.E.2d 349, 355 (1985). It can not be said that defendants' conduct meets this standard. The fact that plaintiff was charged, suspended, investigated and returned to work in a job he considered less desirable does not raise cognizable state law claims that escape the preemptive effect of the RLA. *See Poppe v. Trans World Airlines, Inc.*, No. 88–3563 (E.D.N.Y., Sept. 14, 1989) (unless sufficiently outrageous conduct can be shown, emotional distress claim that cannot be segregated from labor dispute is preempted by RLA).

It is not disputed that Feldleit was deeply distressed by the affair. Nevertheless, the undisputed evidence shows that the LIRR acted responsibly and fairly under the circumstances. Office gossip being what it is, it is not conceivable that the reasons for plaintiff's difficulties could have been kept secret. Attempted suppression would have created the risk of more demeaning rumors.

**V. Applicability of the Federal Employees Liability Act**

■ The FELA allows claims for damages for injury while working for a railroad. It reads as follows:

Every common carrier by railroad while engaging in commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier....

45 U.S.C. § 51.

A FELA action is not barred even where the cause of action is also subject to arbitration under the RLA. *Atchison, Topeka and Santa Fe Ry. v. Buell*, 480 U.S. 557, 567, 107 S.Ct. 1410, 1417, 94 L.Ed.2d 563 (1987); *Coppinger v. Metro–North Commuter R.R.*, 861 F.2d 33, 37 (2d Cir.1988).

■ By its terms the FELA provides a basis for recovery for personal injuries caused by an employer's or co-worker's negligence. *Buell* left the door open to the possibility that damages may be recovered under FELA for emotional injuries that are not accompanied by physical injury. 480 U.S. at 566–67, 107 S.Ct. at 1416–17. A number of courts have found that damages for the negligent infliction of purely emotional distress are recoverable under FELA. *See, e.g., Taylor v. Burlington N.R.R.*, 787 F.2d 1309, 1313–14 (9th Cir. 1986) (pre-*Buell* case). Others have maintained that the emotional injury must be accompanied by evidence of physical harm. *See, e.g., Amendola v. Kansas City Southern Ry.*, 699 F.Supp. 1401, 1410–11 (W.D. Mo.1988). Still others have acknowledged the possibility of recovery for negligently inflicted injuries that are wholly emotional, but remain dubious. *See, e.g., Gaston v. Flowers Transp.*, 866 F.2d 816 (5th Cir. 1989) (survey of case law); *Moody v. Maine Central R.R.*, 823 F.2d 693, 694 (1st Cir.1987).

Plaintiff in this case has failed to show that his co-workers or the employer acted negligently in charging him with the offense, suspending him with pay, launching an internal investigation and, eventually, dropping all charges and inviting him to return to work in another department. The fact that the charges against plaintiff were eventually found to be unjustified is not proof of negligence. Inasmuch as the FELA requires a showing of negligence, plaintiff has failed to raise a claim upon which relief can be granted.

A small number of courts have found that FELA covers intentional torts. *See, e.g., Lancaster v. Norfolk and Western Ry.*, 773 F.2d 807, 812–13 (7th Cir.1985) (pre-*Buell* case finding FELA covers intentional torts provided they are marked by physical contact or threat of physical contact), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987); *Teague v. National R.R. Passenger Co.*, 708 F.Supp. 1344, 1351 (D.Mass.1989) (holding that FELA covers claim of intentional infliction of emotional distress).

More recent cases exclude claims for intentional torts resulting in purely emotional injuries. *See, e.g., Hammond v. Terminal R.R. Ass'n of St. Louis*, 848 F.2d 95 (7th Cir.1988) (rejecting FELA damages claim for emotional injury as result of harassment because FELA claims require physical contact or threat of physical contact), *cert. denied*, —— U.S. ——, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989); *Adkins v. Seaboard System R.R.*, 821 F.2d 340, 342 (6th Cir.) (per curiam) (in case alleging intentional act of conspiracy to fire plaintiff, claim for intentional infliction of emotional distress is not cognizable under FELA), *cert. denied*, 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987); *Campbell v. Pan American World Airways*, 668 F.Supp. 139, 144–45 (E.D.N.Y.1987) (Glasser, J.) (intentional infliction of emotional distress claim can not be brought under FELA since Act limits damages to those caused by negligence).

Whatever the ultimate resolution of the intentional tort and unattached emotional distress issues under the FELA, no conceivable rule would allow recovery in the instant case. *Buell* did not contemplate allowing recovery for emotional anguish whenever an employee was accused, falsely or otherwise, of a serious workplace of-

fense. *See Buell,* 480 U.S. at 566–67, 107 S.Ct. at 1416–17. The emotional injuries plaintiff alleges arise out of conduct which is subject to the railroad's internal grievance process and the arbitration procedures established by the RLA for resolving minor disputes. To allow recovery under FELA under the circumstances of the instant case would undermine the comprehensive administrative procedures established by the RLA.

Neither the RLA or the FELA suggest that employers who in good faith comply with the national policy aimed at eradicating employment discrimination against women, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* should risk incurring liability for tort damages for the emotional distress suffered by a worker accused of sexual harassment by a fellow employee. Whatever emotional distress was experienced by plaintiff was an unavoidable effect of the nature of the employer-employee dispute.

Particularly where the RLA is involved, there is good reason to construe the FELA to exclude non-physical injuries of the kind claimed here as a predicate for recovery for emotional harm. In this case, not only has there been no showing of negligence, but there is also no basis to conclude that plaintiff was "subject to the type of unconscionable abuse which is a prerequisite to recovery" for a purely emotional injury. *See Atchison, Topeka and Santa Fe Ry. v. Buell,* 480 U.S. 557, 566 & n. 13, 107 S.Ct. 1410, 1416 & n. 13, 94 L.Ed.2d 563 (1987). Plaintiff's FELA claim must be dismissed.

## VI. State law claims

A number of the state law claims must be dismissed under preemption, as pointed out in Parts II and IV, *supra.* The others need but brief discussion.

 Two of the claims are plainly unfounded. For the reasons discussed previously, there is no indication that Feldleit was arrested; his claim for false arrest must be rejected. His common law claim for invasion of privacy and violation of civil rights is dismissed for failure to state a claim upon which relief can be granted. *Hurwitz v. United States,* 884 F.2d 684 (2d Cir.1989) (no common law right to privacy exists in New York).

Other state law claims include defamation, conspiracy to defame, intentional infliction of emotional distress and Mrs. Feldleit's derivative claim for loss of consortium. Feldleit claims that Keller acted with malice in accusing him of making the obscene phone call. Because Keller's accusation "suggested" sexual misconduct, plaintiff argues that it constitutes "slander *per se.*" He alleges that Keller "republished" these charges but fails to offer any evidence to that effect. Plaintiff also claims that the "labels" of "insubordination" and "conduct unbecoming to an employee"—that is, the charges lodged against him—were defamatory because they were "illusory," "vague," used "indiscriminately," and ultimately without foundation. He asserts that defendant Tower "published" a letter with those charges. His allegations of conspiracy are based on the fact that each of the defendants at some time either made the initial accusation, brought the charges against him or "repeated" them by informing plaintiff in writing of their existence.

No showing has been made that the defendants acted with the requisite malice or reckless disregard for the truth by publishing and circulating defamatory statements about the plaintiff. *See Linn v. United Plant Guards Local 114,* 383 U.S. 53, 64–65, 86 S.Ct. 657, 663–64, 15 L.Ed.2d 582 (1966) (limiting availability of state remedies for defamation in labor context), *cited approvingly in Farmer,* 430 U.S. at 298–99, 97 S.Ct. at 1062–63. The only publication to which plaintiff can point is the letter in which he was informed of the charges brought against him and of the procedures accompanying a company trial. This letter, which was addressed to plaintiff and which complied with disciplinary procedures set forth in the collective bargaining agreement, does not constitute a publication under the law of defamation. *See Linn,* 383 U.S. at 64–65, 86 S.Ct. at 663–64 (defamatory statements must have been circulated

with malice and caused damage to complainant); *Poppe v. Trans World Airlines, Inc.*, No. 88–3563 (E.D.N.Y., Sept. 14, 1989) (narrowly-circulated statement intended to trigger disciplinary proceedings against employee can not form basis of state defamation claim) (citing cases). Copies of the letter were necessarily sent to Gerrain, the local chairman, and his supervisor. There is no evidence that the letter was circulated to any of plaintiff's co-workers.

As already noted, there is a comparable lack of evidence to support plaintiff's emotional injury claim. Without a viable claim by her husband, Mrs. Feldleit's attendant claims must also fall. *Tebbutt v. Virostek*, 65 N.Y.2d 931, 935 n. 1, 493 N.Y.S.2d 1010, 1013 n. 1, 483 N.E.2d 1142, 1145 n. 1 (1985).

VII. Conclusion

The complaint will be dismissed unless within thirty days plaintiffs can produce evidence sufficient to support their state claims.

So ordered.