George HADGES, Plaintiff–Appellant,

v.

YONKERS RACING CORPORATION, Defendant–Appellee.

No. 202, Docket 90–7380.

United States Court of Appeals, Second Circuit.

Argued Sept. 19, 1990.

Decided Nov. 19, 1990.

---

**1080**

Mark S. Arisohn, New York City (Arthur M. Neiss, Goodkind, Labaton & Rudoff, of counsel) for plaintiff-appellant.

Frederick J. Martin, White Plains, N.Y. (William P. Harrington, Bleakley Platt & Schmidt, of counsel), for defendant-appellee.

Before OAKES, Chief Judge,
MESKILL, Circuit Judge, and RESTANI, Judge.[*]

OAKES, Chief Judge:

This appeal is from a judgment of the United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge,* denying George Hadges's motion for a preliminary injunction and granting the cross-motion of Yonkers Racing Corporation ("YRC") for summary judgment. It presents an issue of first impression for this court: whether Yonkers Racing Corporation, as the private owner of a racetrack licensed by the State of New York (the "State") to conduct parimutuel wagering on harness races,[1] engaged in state action for the purposes of 42 U.S.C. § 1983 when it denied appellant's request to work at appellee's racetrack. We believe that the challenged action was not attributable to the State, and therefore affirm.

Appellant George Hadges ("Hadges") is a journeyman harness racehorse driver, trainer, and owner. Hadges filed the instant action pursuant to section 1983 alleging that appellee Yonkers Racing Corporation violated Hadges's Fourteenth Amendment right to due process when it denied Hadges's request to work at its racetrack in September, 1989. At the time Hadges made his request, he was licensed by New York and several other states to participate in harness racing. New York requires such a license before one can work at the racetracks in the State. N.Y.Comp.Codes R. & Regs. tit. 9, § 4101.24(b) (1985) (promulgated pursuant to N.Y.Rac. Pari–Mut. Wag. & Breed. Law § 309 (McKinney 1984 & Supp.1990)). During his racing career, Hadges has worked at all the New York harness racetracks,[2] but primarily at Yonkers Raceway.

YRC, a closely held corporation, owns Yonkers Raceway. The corporation has invested $65 million in Yonkers Raceway since it purchased the racetrack in 1970. YRC operates the racetrack pursuant to a one-year renewable license issued by the New York State Racing and Wagering Board (the "Racing Board"). *See* N.Y. Rac. Pari–Mut. Wag. & Breed. Law § 307(1) (McKinney 1984). Yonkers Raceway is currently the only operating New York harness racetrack in the New York metropolitan area, although the Meadowlands in New Jersey often has harness, as opposed to flat, racing.

---

[*] The Honorable Jane A. Restani, of the United States Court of International Trade, sitting by designation.

1. A harness race is a trotting or pacing race, usually run in the United States at a distance of one mile, for Standard bred horses harnessed to sulkies, which are light, two-wheeled carriages.

2. Aside from Yonkers Raceway, the other harness racetracks in New York are Batavia Downs, Buffalo Raceway, Monticello Raceway, Saratoga Raceway and Vernon Downs. Another harness racetrack, Roosevelt Raceway, closed in 1988.

Prior to YRC's denial of Hadges's application, Hadges's racing career suffered two significant interruptions. First, the Racing Board suspended Hadges's license from 1974 to 1976 because Hadges had not reported his criminal record on his license application. Thereafter, in 1989, the Racing Board once again suspended Hadges's license after determining that Hadges had illegally passed wagering information to a patron at Roosevelt Raceway on a race in which Hadges was participating. Specifically, the Racing Board found that, as Hadges approached the starting gate, he trailed behind the other horses and shouted, "Get the '7'," to someone in the stands. Hadges's horse, the number 2, finished behind the victor—the number 7.

The Racing Board reinstated Hadges's license in July, 1989. Soon thereafter, Hadges applied to YRC for racing and training privileges at Yonkers Raceway. YRC denied the application. Upon Hadges's request, representatives of YRC met with him to explain the denial. YRC's General Manager informed Hadges that YRC did not grant Hadges's application because of Hadges's involvement in litigation over the ownership of horses, as well as his lack of integrity as evidenced by the incident at Roosevelt Raceway.

Hadges contends that YRC's denial of his application amounted to state action under section 1983 because YRC was subject to pervasive State statutory and regulatory control, and because it generated significant tax revenues for the State, received State tax credits, and held a monopoly over harness racing in the New York metropolitan area. In response, YRC asserts that it rejected Hadges's application pursuant to its statutory right as private owner to exclude persons from its racetrack without reason, provided that the exclusion is not based upon race, creed, or national origin. *See* N.Y.Comp.Codes R. & Regs. tit. 9, § 4119.8 (1985). YRC further contends that its private right exists independently from the Racing Board's power to suspend or revoke licenses. *See* N.Y. Rac. Pari–Mut. Wag. & Breed. Law § 309 (McKinney 1984 & Supp.1990).

## DISCUSSION

■ To maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must establish that he suffered a violation of a constitutional right and that the violation was committed under color of state law. 42 U.S.C. § 1983. Private conduct qualifies as state action when "[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity," *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961), or when "there is a sufficiently close nexus between the State and the challenged action" that the private party's action "may be fairly treated as that of the State itself," *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).

Appellant argues that YRC's denial of his request to work at Yonkers Raceway qualifies as state action under both the symbiotic relationship test under *Burton*, and the close nexus test set forth in *Jackson*. Neither of these tests lends itself to formulaic applications. Instead, both of these inquiries require us to sift through and weigh the facts to determine whether the alleged ties between the State and the private actor are sufficiently strong to attribute the private actor's conduct to the state. *See Burton*, 365 U.S. at 722, 81 S.Ct. at 860. The factual record, specifically YRC's actions within the context of the harness racing industry in the State, necessarily determines the contours and limits of our decision.

### A. *Symbiotic Relationship*

■ In arguing that the State was a joint participant in YRC's enterprise, Hadges takes us on a guided tour of Yonkers Raceway, highlighting instances of the State's allegedly pervasive presence: at the door, State law requires YRC to collect an admission tax, N.Y.Rac. Pari–Mut. Wag. & Breed. Law § 306 (McKinney 1984), and regulates the price of admission, N.Y. Comp.Codes R. & Regs. tit. 9, § 4101.26

(1985); at the betting windows, the Racing Board supervises all gambling activities, N.Y.Rac. Pari–Mut. Wag. & Breed. Law § 305 (McKinney 1984), and the State Tax Commission oversees the financial aspects of gambling, *id.*, §§ 306, 316 (McKinney 1984 & Supp.1990); on the track and in the stands, the State has exclusive power to issue licenses to all track personnel, from vendors to veterinarians, *id.*, § 309; and, at the finish, YRC generates significant tax revenues for the State, and the State awards YRC tax credits.

Armed with these examples of the State's fiscal and regulatory links to YRC, Hadges erroneously allies the instant case with *Burton*. In *Burton*, the owner of a private restaurant that leased space in a state-owned building refused to serve an African–American man. *See Burton*, 365 U.S. at 720, 81 S.Ct. at 859 (1961). The Supreme Court found that the restauranteur's action qualified as state action because the state owned the building, paid the building's maintenance, owned an adjacent parking lot and therefore had a direct financial interest in the restaurant's success, and dedicated the building for public purposes, thereby conferring tax exempt status on the building. *See id.* at 723–24, 81 S.Ct. at 860–61.

While *Burton* cautions courts to search for "nonobvious involvement of the State in private conduct," *id.* at 722, 81 S.Ct. at 860, we do not believe that appellant's tour of Yonkers Raceway reveals the nature or extent of state involvement that was present in *Burton*. In contrast to *Burton*, the State in the instant case does not have a proprietary interest in Yonkers Raceway. *See id.* at 723, 81 S.Ct. at 860–61; *see also Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 175, 92 S.Ct. 1965, 1972, 32 L.Ed.2d 627 (1972) (symbiotic relationship test not satisfied where site of challenged action owned by private party). Yonkers Raceway was purchased and is maintained by private, not public, dollars. The State in the instant case also does not own a neighboring, interlinked business, and consequently lacks as direct a financial stake in YRC's success as was present in *Burton*. *See Burton*, 365 U.S. at 724, 81 S.Ct. at 861.

Similarly, on a fiscal score, while YRC receives tax credits from the State, YRC does not enjoy the State's tax-exempt status. Indeed, much of the revenue that the State gains from YRC is derived from taxes paid by YRC, its patrons, and its workers. To be sure, the State gains greater revenues if YRC prospers. If this link were sufficient to forge a symbiotic relationship between YRC and the State, however, the actions of every successful corporation within the State would qualify as state action. *See Roberts v. Louisiana Downs, Inc.*, 742 F.2d 221, 225 (5th Cir. 1984) (receipt of substantial revenues by state from private actor's business does not create symbiotic relationship between private actor and state).

Lastly, Hadges argues that the State's regulatory control over YRC satisfies the symbiotic relationship test. Subsequent to *Burton*, however, the Supreme Court enunciated the close nexus test as the standard for determining whether state regulatory control qualifies as state action. *See Jackson*, 419 U.S. at 351, 95 S.Ct. at 453–54 (1974). Hadges's regulatory argument is therefore more appropriately analyzed under *Jackson*. *See id.; see also Bier v. Fleming*, 717 F.2d 308 (6th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1283, 79 L.Ed.2d 686 (1984); *Fulton v. Hecht*, 545 F.2d 540 (5th Cir.) *cert. denied*, 430 U.S. 984, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977).

## B. *Close Nexus*

■ While the symbiotic relationship test focuses on the state's overall relationship with the private actor, the close nexus test specifically examines the state's link to the challenged action. *See Jackson*, 419 U.S. at 351, 95 S.Ct. at 453–54. Hadges does not contend that a State official was directly involved in YRC's denial of Hadges's request.[3] Instead, Hadges offers

---

**3.** In the Reply Brief and again at oral argument, Hadges stated that, "at this stage of the litigation," he had no evidence that a State official

influenced YRC's decision, but suggested that we remand for further discovery on this issue. Under section 1983, however, appellant bears

three other arguments to support his theory. Specifically, Hadges contends that the State's pervasive regulatory control over YRC, the State's alleged delegation, via N.Y.Comp.Codes R. & Regs. tit. 9, § 4119.8 (1985), of its authority to exclude undesirable persons from Yonkers Raceway to YRC, and YRC's sometime monopoly over harness racing in the New York metropolitan area satisfy the close nexus test. We believe that these arguments are untenable because in each instance the State's link to the challenged action is too tenuous to fall within *Jackson.*

In *Jackson,* Metropolitan Edison ("Metropolitan"), a privately-owned utility, terminated Jackson's electricity because plaintiff's account was in arrears. *See Jackson,* 419 U.S. at 346–47, 95 S.Ct. at 451–52. Plaintiff filed suit pursuant to section 1983 claiming that the termination constituted state action depriving her of property without due process of law. *See id.* at 347–48, 95 S.Ct. at 451–52. Jackson's state action claim rested on the state's extensive regulation of the utility, the monopoly status that the state had allegedly conferred upon Metropolitan, the essential nature of the utility service, and the state's alleged approval of Metropolitan's termination practice. *See id.* at 351–55, 95 S.Ct. at 453–56. The Court found that the state's involvement in Metropolitan's affairs was insufficient to create a "close nexus" between Metropolitan and the state such that "the action of the [utility] may be fairly treated as that of the State itself." *Id.* at 351, 95 S.Ct. at 453.

*Jackson* specifically refutes appellant's contention that the presence of state regulation alone transmutes a private actor's conduct into state action. *See id.* at 350, 95 S.Ct. at 453. As mentioned above, there is no evidence that a State official participated in YRC's decision to deny Hadges's application. The district court, therefore,

correctly distinguished the instant case from *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589 (3d Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980), in which the Third Circuit held that if a State official "personally and actively participated" in a racetrack's decision to expel a driver, state action existed. *Id.* at 599. Although YRC's denial of Hadges's application was based in part on the State's suspension of Hadges's license, YRC did not act at the behest of a State official and was not enforcing a violation of State racing law. Thus, the line between the State, as regulator of the harness racing industry, and YRC, as a private corporation acting in what it believed to be its own best interest as well as the best interest of the harness racing industry, remained distinct. As such, appellant's regulatory argument fails under *Jackson. See Jackson,* 419 U.S. at 350, 95 S.Ct. at 453.

Appellant seizes upon *Jackson* dicta regarding delegation by the state of state power to a private actor as the second ground for his close nexus argument. Specifically, appellant attaches weight to the comment that, "[i]f we were dealing with the exercise by Metropolitan of some power delegated to it by the State which is traditionally associated with sovereignty ... our case would be quite a different one." *Id.* at 352–53, 95 S.Ct. at 454. Hadges argues that, via N.Y.Comp.Codes R. & Regs. tit. 9, § 4119.8 (1985), the State delegated to YRC its authority to exclude undesirable persons from Yonkers Raceway.

While declaring that the power to exclude a person for no reason from a privately owned racetrack is "clearly a power 'traditionally associated with sovereignty,'" however, appellant produces no evidence to support this conclusory statement. Indeed, section 4119.8, providing that the private owner of a harness racetrack may

---

the burden of proof on the state action issue. *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 4732–33, 56 L.Ed.2d 185 (1978). As such, to defeat YRC's motion for summary judgment, which was supported by an affidavit from a YRC representative stating that no State official had taken part in YRC's deci-

sion, Hadges would have had to "set forth specific facts showing that there [was] a genuine issue for trial." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Because he did not produce any such facts, remand for further discovery would be inappropriate.

exclude any person without reason, provided that the exclusion is not based on race, creed, color or national origin, N.Y.Comp. Codes R. & Regs. tit. 9, § 4119.8 (1985), simply codifies the racetrack owner's common law right to exclude undesirable persons from the track. *See, e.g., Madden v. Queens County Jockey Club, Inc.,,* 296 N.Y. 249, 72 N.E.2d 697, *cert. denied,* 332 U.S. 761, 68 S.Ct. 63, 92 L.Ed. 346 (1947); *People v. Licata,* 28 N.Y.2d 113, 320 N.Y. S.2d 53, 268 N.E.2d 787 (1971). Moreover, this private right is different in kind, nature, and origin from the State Racing Board's power to enforce State racing law through license suspensions. N.Y.Rac. Pari–Mut. Wag. & Breed. Law § 309 (McKinney 1984 & Supp.1990). Appellant's delegation argument thus unsuccessfully attempts to transform a private proprietary right into a State regulatory power.

Finally, appellant's last argument—that YRC's alleged monopoly status in the New York metropolitan area satisfies the close nexus test—also lacks merit. As a preliminary matter, we question whether Hadges has produced sufficient evidence to support his allegation that YRC has a monopoly over harness racing in the New York metropolitan area. Leaving aside the Meadowlands operation, there is no indication that the State ever "granted or guaranteed" YRC such a monopoly. *Jackson,* 419 U.S. at 351 & n. 8, 95 S.Ct. at 454 & n. 8.[4] While State law limits the number of harness racing licenses that the Racing Board can issue to eight per year, N.Y.Rac. Pari– Mut. Wag. & Breed. Law § 305 (McKinney 1984), the minimal impact of this limit does not confer a monopoly on YRC. *See Moose Lodge No. 107,* 407 U.S. at 177, 92 S.Ct. at 1973. The existence of the alleged monopoly is therefore dubious at best, and it will be remembered that for many years Yonk-

ers Raceway and Roosevelt Raceway operated in tandem.

Even assuming, however, that Hadges has established that YRC holds such a monopoly, this case still would not satisfy the close nexus test. Under *Jackson,* Hadges must establish a relationship between YRC's actions and its monopoly status. *See Jackson,* 419 U.S. at 351–52, 95 S.Ct. at 453–54. While Hadges claims that, because of YRC's monopoly status, its denial of his request effectively revoked his license to work at harness racetracks in the State, Hadges offers us no credible evidence supporting such a *de facto* revocation.[5] Likewise, he produces no evidence of any other link between YRC's denial of his request and its alleged monopoly. Hadges's recipe for a case that meets the close nexus test therefore lacks a basic ingredient—a nexus. *See id.* at 351, 95 S.Ct. at 453–54.

Accordingly, we affirm the judgment of the district court.

---

4. In fact, in the past, the State has licensed entities apart from YRC to conduct harness racing in the New York metropolitan area. Prior to 1988, Roosevelt Raceway conducted harness racing in Long Island. Appellant can point to no evidence that the State would not license the owner of Roosevelt, or any other racing concerns, to conduct harness racing in the greater New York City area.

5. Indeed, the record lends no support to Hadges's contention. The State has licensed six harness racing tracks within its jurisdiction. While Yonkers Raceway may be the most convenient racetrack for appellant, the remaining five are also accessible. Inconvenience is not the stuff from which *de facto* revocation is made.