Frank HANNAH, Plaintiff,

v.

METRO–NORTH COMMUTER RAIL-
ROAD COMPANY, Transport Workers
Union (Local 1460), and John McGrath,
individually and as Union President,
Defendants.

No. 87 Civ. 7252 (PKL).

United States District Court,
S.D. New York.

Dec. 18, 1990.

Dorf & Perlmutter, New York City (Robert C. Dorf, of counsel), for plaintiff.

Robert Bergen, Gen. Counsel, New York City (C. Sue Barnett, of counsel), for Metro–North Commuter R. Co.

## OPINION AND ORDER

LEISURE, District Judge.

This is a diversity action arising out of an investigation and arrest, followed by a criminal prosecution, disciplinary proceeding and subsequent dismissal of plaintiff, Frank Hannah ("Hannah"), an employee of defendant Metro–North Commuter Railroad ("Metro–North"). Plaintiff's original complaint asserted that defendant committed various common law torts against him. Metro–North has now moved for dismissal of plaintiff's claims pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6). Plaintiff has cross-moved, pursuant to Fed.R.Civ.P. 15(a), to amend the state-law tort claims in his complaint and to add civil rights claims under 42 U.S.C. § 1983. In its papers op-

posing the amendment of the complaint, defendant has requested an award of attorney's fees under Fed.R.Civ.P. 11 for the costs of preparing its opposition to plaintiff's cross-motion.

## BACKGROUND

The essential facts in this matter are not in dispute. On Wednesday, November 27, 1985, J.J. McMahon ("McMahon"), a Metro–North employee, noticed that his paycheck was missing. McMahon had endorsed the check upon receiving it at the Metro–North headquarters in Grand Central Terminal in Manhattan, but had not cashed it, apparently deciding to do so at a restaurant in the vicinity of Grand Central Terminal. Following the long Thanksgiving holiday weekend, McMahon reported his paycheck missing. Metro–North immediately began an investigation regarding that paycheck. During the course of the investigation conducted by Detective George Coppola ("Coppola"), a member of the Metro–North Police Department, depositions were taken of McMahon and Lauren Mahoney ("Mahoney"), a Metro–North cashier. Mahoney asserted her belief that Hannah had submitted the check to her for payment, along with remittance for bar receipts that Hannah had received in connection with his position as a service attendant on the railroad. The cancelled check was recovered, showing McMahon's endorsement, along with a second, illegible endorsement, allegedly that of plaintiff.

On January 8, 1986, based on the information gathered from Mahoney and McMahon, Detective Coppola arrested Hannah for forgery, possession of a forged instrument, grand larceny, and criminal possession of stolen property. Plaintiff was then incarcerated and arraigned before a New York City Criminal Court judge. On January 10, 1986, Hannah was notified to attend a hearing to be held on January 21, 1986, in connection with an internal Metro–North investigation of the allegations against him. This hearing was postponed numerous times. Meanwhile, the criminal charges did not proceed in a timely fashion; and, on August 30, 1987, the criminal

charges were dismissed for lack of speedy prosecution.

On October 9, 1987, Hannah filed this action.[1] Hannah's original and amended complaints named Metro–North, the TWU, and John McGrath as defendants. This action was originally assigned to the Honorable John M. Walker, Jr., prior to his elevation to the United States Court of Appeals for the Second Circuit. Soon after the action was filed, Judge Walker placed the case on the suspense docket of this Court pending the resolution of the compulsory arbitration provided for in the collective bargaining agreement between Metro–North and plaintiff's union. *See* Documents Comprising the Complaint Exhibit A, Rule 28, at 22–26. As part of the Stipulation and Order For Partial Stay, dated December 19, 1987, the parties stipulated that upon return of the case to the Court's active docket the plaintiff would file "appropriate amendments to the complaint reflecting the results of the administrative process."

On October 16, 1987, Metro–North finally held its own hearing on the allegations against Hannah. At the hearing, Hannah requested that he be represented both by counsel from his union and by his personal attorney. The Metro–North hearing officer denied these requests, but did permit John McGrath, the president of Transport Workers Union Local 1460 ("TWU"), to represent Hannah during the proceedings. On October 23, 1987, after the hearing had been completed, Hannah was notified that his employment with Metro–North had been terminated based on the charge of "stealing" that had been lodged against him.[2] Subsequent to that decision, Hannah availed himself of the compulsory griev-

ance arbitration procedure mandated by the collective bargaining agreement between the TWU and Metro–North.

On February 26, 1990, Special Board of Adjustment No. 998 found in favor of plaintiff, and ordered him to be reinstated to his former position with full back pay. The arbitrators found two reasons for reinstating Hannah. First, they held that the exclusion of the TWU attorney from Hannah's disciplinary hearing was improper under the collective bargaining agreement. Second, they found that there was insufficient evidence to prove convincingly that Hannah had committed the offense charged. The arbitrators pointed to certain weaknesses in the evidence submitted during the disciplinary hearing and found it not sufficiently conclusive to justify Hannah's dismissal.

On March 2, 1990, plaintiff requested that this Court return this action to its active calendar. In addition, plaintiff informed the Court by letter that he was discontinuing all claims against the TWU and John McGrath, but that he was proceeding against Metro–North on five causes of action: unlawful arrest, malicious prosecution, negligent breach of contract, libel and prima facie tort.

Defendant now moves to dismiss all claims against it pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), addressing its motion to what it has styled as "Documents Comprising the Complaint," which included the amended complaint, the agreement between Metro–North and Hannah's union, and a number of other documents. Defendant's first argument is that this Court lacks subject matter jurisdiction over plaintiff's state law claims, which, it argues, are preempted by 45 U.S.C. § 153, the Railway

---

1. Hannah apparently served both a complaint and an amended complaint on October 9; however, only the original complaint was filed with this Court. *See* Affirmation in Support of the Motion to Amend Complaint and in Opposition to Motion to Dismiss the Complaint ¶ 8. The two are identical except for the addition of the docket number to the amended complaint, and this opinion will refer to plaintiff's claims as contained in his amended complaint, in the form the "amended complaint" or the "first amended complaint."

2. The charge against Hannah was, as follows:

Stealing, in that you submitted payroll check No. 50828 dated November 25, 1985 in the amount of $608.89 for J.J. McMahon as remittance for your bar receipts at Receiver of Train Collections Office, G.C.T., approximately 10 p.m. November 27, 1985, without authorization of J.J. McMahon, resulting in monetary gain to yourself.

Labor Act ("RLA"). Defendant's second argument is that even if plaintiff's claims are not preempted, his allegations fail to state a claim upon which relief can be granted.

In response to defendant's motion, plaintiff has conceded that "since the dismissal [did] not indicate innocence, ... he cannot maintain a cause of action for malicious prosecution." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Plain.Mem.") at 3. He has also "withdrawn those causes of action based upon breach of contract [because] these claims have been preempted by the RLA." Plain.Mem. at 5. Notwithstanding these concessions, however, plaintiff argues that his remaining tort claims are not preempted by the RLA. In addition, plaintiff has cross-moved to amend his complaint, pursuant to Rule 15(a), to supplement his claims for unlawful arrest and imprisonment, libel, and prima facie tort, and to add a claim for wrongful discharge and a civil rights action under 42 U.S.C. § 1983.

In its papers opposing plaintiff's cross-motion, defendant asserts that because its moving papers demonstrate that plaintiff has no viable claim, "[p]laintiff's response should have been in the form of a stipulation to dismiss this action with prejudice.... [W]e believe Metro-North is entitled to ... an order under Rule 11 for its attorney's fees in opposing his cross-motion." Memorandum of Law in Further Support of the Motion of Defendant Metro-North Commuter Railroad to Dismiss the Complaint and in Opposition to Plaintiff's Cross-Motion to Amend His Complaint ("Def.Reply") at 25.

## DISCUSSION

The Court will first address defendant's motion to dismiss, and will then turn to plaintiff's motion to amend.

### I. *Defendant's Motion to Dismiss*

#### A. Claims Discontinued by Plaintiff

In his letter to the Court of March 30, 1990, plaintiff informed the Court that he was discontinuing and withdrawing all claims against defendants Transport Workers Union (Local 1460) and John McGrath, individually and in his capacity as President of the Union, and that he was discontinuing and withdrawing his fourth, sixth, seventh, ninth, tenth, and eleventh causes of action as to all defendants, and his eighth cause of action against all defendants except Metro-North.

In his papers opposing defendant's motion to dismiss, plaintiff concedes that he cannot maintain an action for malicious prosecution, his second cause of action. Plain.Mem. at 3.

Accordingly, defendant's motion to dismiss is granted as to these claims, which are dismissed with prejudice.

#### B. Defendant's 12(b)(1) Motion

Defendant asserts that plaintiff's state law claims should be dismissed for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), because they are preempted by the Railway Labor Act, 45 U.S.C. § 153 Second ("RLA").

■ The RLA was enacted in 1926 to promote stability in the railroad industry by encouraging labor and management to resolve their disputes peacefully. *See Detroit & T. Shore Line R.R. v. UTU*, 396 U.S. 142, 148, 90 S.Ct. 294, 298, 24 L.Ed.2d 325 (1969). Under the current version of the statute, exclusive jurisdiction over "minor" disputes arising out of the employment relationship is vested in labor-management boards created by statute or Public Law Boards chosen by the parties. *See, e.g., Atchison, T. & Sta. F. Ry. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987); *Andrews v. Louisville & N. R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *Baylis v. Marriott Corp.*, 843 F.2d 658, 662 (2d Cir.1988); *Underwood v. Trans World Airlines, Inc.*, 710 F.Supp. 78, 85 (S.D.N.Y.1989). Consequently, district courts lack subject matter jurisdiction over such claims. *Baylis, supra*, 843 F.2d at 662.

■ "Minor" disputes under the RLA are limited to two types of claims: (1) claims that can be resolved by interpreting

and applying the terms of a collective bargaining agreement; and (2) claims that arise from situations not specifically covered by a collective bargaining agreement but incidental to the employment relationship. *See Independent Union of Flight Attendants v. Pan American World Airways*, 789 F.2d 139 (2d Cir.1986) (per curiam) (citing *Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 722–723, 65 S.Ct. 1282, 1289–1290, 89 L.Ed. 1886 (1945)).[3]

Plaintiff concedes that his claims for negligent breach of contract and wrongful discharge are minor disputes under the RLA, and thus preempted. He argues, however, that his tort claims for unlawful arrest and imprisonment, prima facie tort, and libel are not minor disputes because they are not "inextricably intertwined" with either the collective bargaining agreement or the employment relationship. Rather, plaintiff argues, his remaining claims stem solely from his arrest, imprisonment and criminal prosecution, a course of action by defendant that is independent of its role as his employer, its internal disciplinary procedures, or its rights and obligations under the collective bargaining agreement. Defendant contests this characterization of the claims, arguing that the claims are not based on the criminal prosecution of the plaintiff, but rather on the manner in which defendant conducted its internal investigation prior to arresting plaintiff.

### 1. Unlawful Arrest and Prima Facie Tort

In *Merola v. National R.R. Passenger Corp.*, 683 F.Supp. 935 (S.D.N.Y.1988), the Court addressed circumstances similar to those in the instant case. In *Merola,* an employee of the Amtrak police force was arrested, booked and retained in custody by the New York City Police on criminal charges. After an internal investigation and hearing were conducted, Merola was dismissed from his job. When the criminal charges were later dismissed, Merola sued his former employer and various co-workers for false arrest and imprisonment, malicious prosecution and illegal wiretapping.

In holding that Merola's claims were not preempted by the RLA, Judge Cedarbaum held that the claims

> [did] not arise out of the discharge itself. Rather, they address[ed] the entirely different question of whether he was unlawfully arrested, prosecuted and wiretapped, and the extent of the damages he suffered thereby.

*Id.* at 938.

The Court concluded that the claims did not involve questions that were "basically contractual in nature," *id.* at 939, and that it therefore possessed subject matter jurisdiction over them.

Another recent case emphasized that the viability of the claims turns on the nature of the incarceration. In *Feldleit v. Long Island R.R.*, 723 F.Supp. 892 (E.D.N.Y. 1989), the plaintiff was questioned in his employer's office, and then taken by LIRR police officers to a conference room where he was read his *Miranda* rights and asked to make a statement. When he refused, plaintiff's employer insisted that he leave the premises. Although plaintiff was subsequently discharged after an internal disciplinary hearing, no criminal charge was ever filed.

In dismissing plaintiff's false arrest claim, former Chief Judge Weinstein stated that although plaintiff read his *Miranda* rights by the uniformed LIRR police officers, he was never "arrested" because "he was allowed to leave the employer's premises alone after refusing to give a statement." *Feldleit, supra,* 723 F.Supp. at 896. Moreover, Judge Weinstein distinguished his case from *Merola* on the grounds that:

---

**3.** "Minor" disputes do not encompass claims arising from the violation of rights provided by other federal statutes, even if that violation was incidental to the employment relationship. *See Buell, supra,* 480 U.S. at 564–566, 107 S.Ct. at 1414–1416; *Coppinger v. Metro–North Commut-* *er R.R.,* 861 F.2d 33 (2d Cir.1988) (RLA does not preempt § 1983 claims). Defendant concedes that the RLA does not preempt plaintiff's § 1983 claim. Defendant's Memorandum of Law in Support of the Motion to Dismiss ("Def.Mem.") at 19.

[u]nlike Merola, plaintiff was never charged with violating a state law, much less booked at a police station, photographed, fingerprinted or subjected to the other procedures that commonly accompany an arrest.

*Id.* at 896.

■ Following the reasoning in *Merola* and *Feldleit,* the Court finds that plaintiff's arrest, incarceration and arraignment before a New York City Criminal Court judge creates a claim that, if proven, extends beyond the parameters of the employer-employee relationship and the normal grievance process.[4]

Therefore, the Court has jurisdiction to hear plaintiff's proposed false arrest and prima facie tort claims, and defendant's motion to dismiss plaintiff's first and eighth causes of action under Fed.R.Civ.P. 12(b)(1) is denied.

### 2. *Wrongful Discharge and Libel Claims*

■ Somewhat inexplicably, despite plaintiff's concession that his wrongful discharge claim is preempted by the RLA, he has not withdrawn his third cause of action based on this claim, and he continues to assert such a claim as his second cause of action in his proposed second amended complaint. We agree with both parties that this claim is preempted, as it is admittedly a termination dispute arising out of the employment relationship, *see Andrews, supra,* 406 U.S. 320, 92 S.Ct. at 1563, and is indeed a dispute that has already been adjudicated by the Special Board.

■ The Court agrees with defendant that plaintiff's libel claim, his fifth cause of action, is preempted. The claim is based on a letter notifying plaintiff and various company and union officials of the pending disciplinary charges and the date of the internal company hearing. Absent any allegations that this letter was published to anyone outside of the company or the union, it seems clear that this letter was "intertwined" with the employer-employee relationship and the internal grievance machinery. Consequently, the libel claim is a minor dispute that is preempted by the RLA.

Since this Court lacks subject matter jurisdiction over these claims, plaintiff's third and fifth causes of action are dismissed with prejudice.

### C. Defendant's 12(b)(6) Motion

"The Court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 Int'l Brotherhood,* 905 F.2d 35 (2d Cir.1990); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980))). "Dismissal of a complaint for failure to state a claim is a 'drastic step.'" *Meyer v. Oppenheimer Management Corp.,* 764 F.2d 76, 80 (2d Cir.1985) (citation omitted).

■ A motion to dismiss under Fed.R. Civ.P. 12(b)(6) must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974), (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)); *see also Rauch v. RCA Corp.,* 861 F.2d 29, 30 (2d Cir.1988). The Court must accept plaintiff's allegations of facts as true, together with such reasonable inferences as may be drawn in its favor. *See Scheuer,*

---

**4.** *Cf. Bradley v. Trans World Airlines, Inc.,* No. 85 C 3941, 1986 WL 20690 (E.D.N.Y. June 2, 1986), where the Court considered an employee's claims of, *inter alia,* false arrest and false imprisonment based on a single incident in which the employee was strip-searched at work. In finding that the claims were preempted, the

Court cited *Strachan v. Union Oil Co.,* 768 F.2d 703 (5th Cir.1985) for the proposition that the plaintiff could have refused to consent to the search "and then could have filed a grievance if disciplinary action followed his refusal to consent." *Bradley,* slip op. at 4.

*supra,* 416 U.S. at 236, 94 S.Ct. at 1686; *Murray v. Milford,* 380 F.2d 468, 470 (2d Cir.1967). Fed.R.Civ.P. 8(a) requires only a " 'short and plain statement of the claim' that will give the defendant fair notice of what plaintiff's claim is and the ground upon which it rests." *Conley, supra,* 355 U.S. at 47, 78 S.Ct. at 102 (*quoting* Fed.R. Civ.P. 8(a)(2)); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

The claims surviving defendant's Rule 12(b)(1) motion are plaintiff's first cause of action, for false arrest, and his eighth cause of action, for prima facie tort. The Court agrees with defendant that these claims were inadequately pled in plaintiff's amended complaint. However, in light of the permission granted plaintiff in the body of this opinion to amend his complaint, the Court need not belabor the deficiencies of the pleading of these claims. Plaintiff's first and eighth causes of action are dismissed without prejudice.

## II. *Plaintiff's Motion to Amend His Complaint*

Fed.R.Civ.P. 15(a) "sets forth a policy in favor of granting leave to amend, stating that 'leave to amend shall be freely given when justice so requires.' " *Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 243 (2d Cir.1987). A motion to amend should be denied only for good reason such as " 'undue delay, bad faith, futility of amendment, and perhaps, most important, the resulting prejudice to the opposing party.' " *Richardson Greenshields Secur., Inc. v. Mui–Hin Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987) (quoting *State Teachers Retirement Board v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir. 1981)); *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau,* 786 F.2d 101, 103 (2d Cir.1986), (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)).

■ Mere delay alone will not suffice as a basis for the district court to deny a request to amend. *Richardson Greenshields, supra,* 825 F.2d at 653 n. 6. Parties have been permitted to assert new claims long after they acquired the facts necessary to support such claims, *see, e.g., Green v. Wolf Corp.,* 50 F.R.D. 220, 223 (S.D.N.Y.1970), and have even been permitted to amend a complaint on the eve of trial. *See Hanlin v. Mitchelson,* 794 F.2d 834 (2d Cir.1986).

Defendant has conceded the liberal standard for leave to amend pleadings in this Circuit, but nonetheless urges the Court to deny plaintiff's motion on the ground that, even with the proposed amendments, plaintiff's claims are either preempted by the RLA or fail to state a claim upon which relief can be granted. While the merits of a claim ordinarily are not relevant to a motion to amend, *Maritime Ventures Int. v. Caribbean Trading & Fid.,* 689 F.Supp. 1340, 1357 (S.D.N.Y.1988), if a proposed amendment is clearly frivolous or advances a claim that is legally insufficient on its face, it is well established that leave to amend should be denied. *S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Bldg. 1 Housing Dev. Fund Co.,* 608 F.2d 28, 42 (2d Cir.1979); *Freeman v. Marine Midland Bank–New York,* 494 F.2d 1334, 1338 (2d Cir.1974); *Dooner v. NMI, Ltd.,* 725 F.Supp. 153, 157 (S.D.N.Y.1989).

The Court finds that the interests of justice, as well as the stipulation of the parties dated December 19, 1987, require that plaintiff be permitted to amend his complaint. However, plaintiff's proposed second amended complaint, submitted along with his motion to amend, will be scrutinized as if defendant's arguments in its reply brief constituted a motion to dismiss these claims. *See Glick v. Koenig,* 766 F.2d 265, 268 (7th Cir.1985) ("[A] district court is justified in denying an amendment if the proposed amendment could not withstand a motion to dismiss.").

## A. Plaintiff's Prima Facie Tort Claim

■ In his proposed second amended complaint, plaintiff alleges, inter alia, that

defendant ... intentionally and maliciously without cause, excuse or justification *discharged* the plaintiff ... and *prosecuted* him criminally....

Plaintiff's Proposed Second Amended Complaint ("Second Amend.Comp.") ¶ 31 (emphasis added), and that

> the arrest, *discharge,* incarceration and *prosecution* of the plaintiff were ... inflicted by defendant upon plaintiff solely to injure and damage the plaintiff.

*Id.* ¶ 32 (emphasis added).

It is clear from these statements that plaintiff is attempting to base his prima facie tort claim on facts arising from his discharge and criminal prosecution in addition to his arrest. This is improper. As discussed above, any claims for wrongful discharge, or which arise from his discharge, are preempted by the RLA.

■■■ In addition, it is improper for plaintiff to bring a prima facie tort claim, akin to the traditional theory of malicious prosecution, when plaintiff cannot bring such a claim directly. New York courts have consistently stated that prima facie tort "should not 'become a "catch-all" alternative for every cause of action which cannot stand on its legs.'" *Curiano v. Suozzi,* 63 N.Y.2d 113, 118, 480 N.Y.S.2d 466, 470, 469 N.E.2d 1324, 1328 (1984) (quoting *Belsky v. Lowenthal,* 62 A.D.2d 319, 323, 405 N.Y. S.2d 62, 65, *aff'd* 47 N.Y.2d 820, 418 N.Y. S.2d 573, 574, 392 N.E.2d 560, 561 (1978)). It cannot be used "to avoid the more stringent requirements of traditional torts." *Vevaina v. Paccione,* 125 A.D.2d 392, 509 N.Y.S.2d 113, 114 (1986) (quoting *Curiano, supra,* 63 N.Y.2d at 118, 480 N.Y.S.2d at 470, 469 N.E.2d at 1328); *see also Belsky, supra,* 62 A.D.2d at 323, 405 N.Y.S.2d at 65 ("[I]t would be unwise, we think, to allow every unrealized cause of action to be tortured into a prima facie tort action, by the liberal application of 'malicious' to the motives of the disappointed plaintiff ...").

However, although double recovery is not allowed, " 'where a traditional tort remedy exists, a party will not be foreclosed from pleading, as alternate relief, a cause of action for prima facie tort.'" *Hughes v. Patrolmen's Benevolent Assoc.,* 850 F.2d 876, 882 (2d Cir.1988) (quoting *Freihofer v. Hearst Corp.,* 65 N.Y.2d 135, 143, 490 N.Y. S.2d 735, 480 N.E.2d 349 (1985)).

■■ Under these well-established principles, the only proper basis for plaintiff's prima facie tort claim is his arrest and initial incarceration on January 8, 1986, prior to his arraignment, the same facts that give rise to plaintiff's false arrest claim.

■■ The four elements of a prima facie tort claim under New York law are: (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act or series of acts that would otherwise be lawful. *See Sharma v. Skaarup Ship Management Corp.,* 699 F.Supp. 440, 445 (S.D.N.Y.1988); *Stratford Group Ltd. v. Interstate Bakeries Corp.,* 590 F.Supp. 859, 865–66 (S.D.N.Y. 1984).

#### 1. *Intent and Lack of Justification*

Courts interpreting the intent element of the tort have held that "for plaintiffs to recover for prima facie tort, they must allege and prove that defendants acted with 'exclusive malicious motivation.'" *Sharma, supra,* 699 F.Supp. at 445.

> The sole motivation for the damaging acts must have been a malicious intention to injure the plaintiff. Where there are other motives, such as profit, self-interest, or business advantage, there is no recovery under the doctrine of prima facie tort.

*Marcella v. ARP Films, Inc.* 778 F.2d 112, 119 (2d Cir.1985).

> Plaintiff alleges that
>
> the sole motive of the defendant ... was malicious and malevolent in that the arrest [and] incarceration ... of the plaintiff were consciously false and were inflicted by defendant ... upon plaintiff solely to injure and damage the plaintiff.

Second Amend.Comp. ¶ 32.

Defendant relies on a finding by the New York Supreme Court Appellate Division, that "[p]laintiff is bound to *present proofs* tending to exclude any motive other than a desire on the part of the defendants to cause harm, [and] conclusory allegations of malice are not sufficient to establish that he has a case." *Reale v. IBM Corp.,* 34 A.D.2d 936, 311 N.Y.S.2d 767, 768–769

(1970) *aff'd,* 28 N.Y.2d 912, 322 N.Y.S.2d 735, 271 N.E.2d 565 (1971) (emphasis added). *Reale,* however, involved a motion for summary judgment rather than a motion to dismiss. While plaintiffs are required to provide evidence of facts supporting their claims to survive a summary judgment motion, it is axiomatic that to survive a motion to dismiss such evidence is neither required nor properly considered under Fed.R.Civ.P. 15(a) or 12(b)(6). *See Festa, supra,* 905 F.2d at 37.

■ Similarly, defendant argues that the findings of the Adjudication Board indicate that: (1) defendant had a motive other than malice in conducting the investigation and disciplinary proceedings, and (2) defendant had a valid excuse and justification for its actions. As noted above, it would be improper for the Court to address these arguments, as they require consideration of factual matters outside the scope of the complaint.

■ Based on plaintiff's allegations that defendant acted intentionally and without excuse or justification, Second Amend. Comp. ¶ 31, and from a "sole" malicious motive, and that its acts were "consciously false," *id.* ¶ 32, the Court finds that plaintiff has sufficiently alleged the first and third elements of a prima facie tort claim.

### 2. *Special Damages*

■ Defendant argues that plaintiff's allegations of damages for the costs of a criminal defense attorney, personal attorneys, a handwriting expert, truck driving instruction and an investigator do not satisfy the requirement of "special damages."

In *Zausner v. Fotochrome, Inc.,* 18 A.D.2d 649, 235 N.Y.S.2d 698, 699 (1962), the New York Supreme Court, Appellate Division, held that "[s]pecial damages must be alleged with sufficient particularity to identify actual losses and related causally to the allegedly tortious act." Defendant argues that plaintiff's various expenses relate either to his claims for wrongful discharge or malicious prosecution, but not his claim for false arrest. While the Court agrees with defendant regarding the expenses for personal attorneys, a handwrit-

ing expert, truck driving instruction and an investigator, it is possible that plaintiff might prove at trial that some or all of the costs for a criminal attorney were related causally to his arrest and incarceration of January 8, 1986. In that regard, the Court finds that plaintiff has sufficiently alleged special damages resulting from the arrest on which his prima facie tort is properly based.

### 3. *Otherwise Lawful Act*

■ Defendant's final argument regarding the prima facie tort claim is that plaintiff fails to satisfy the fourth requirement, that but for defendant's malicious motives, its acts would have been "otherwise lawful." While defendant concedes that plaintiff does allege that defendant's "act would have been otherwise lawful," defendant argues that this statement is insufficient because it is contradicted by plaintiff's § 1983 pleading, which states that defendant's actions unlawfully violated plaintiff's constitutional rights.

Defendant's argument has little merit, since federal courts have routinely held that "under Rule 8(e)(2) a party may assert inconsistent allegations in the statement of facts." 5 C. Wright, & A. Miller, *Federal Practice and Procedure* [hereinafter Wright & Miller] § 1283, at 533 (2d ed. 1990); *Molsbergen v. U.S.,* 757 F.2d 1016 (9th Cir.1985). Similarly, a pleader may set forth inconsistent legal theories in his pleading and will not be forced to select a single theory on which to seek recovery. 5 Wright & Miller § 1283 at 533–35; *Clay v. Martin,* 509 F.2d 109 (2d Cir.1975). Consequently, the fact that plaintiff alleges in his civil rights claim that defendant's actions were unlawful does not prevent him from alleging otherwise in his prima facie tort claim.

Therefore, the Court finds that plaintiff has sufficiently alleged the elements of a prima facie tort arising from his arrest on January 8, 1986.

### B. § 1983 Claims

"To maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must establish

that he suffered a violation of his constitutional rights and that the violation was committed under color of state law." *Hadges v. Yonkers Racing Corp.*, 918 F.2d 1079, 1081 (2d Cir.1990).

Plaintiff alleges that defendant, by its employees, violated: (1) his Fourth and Fourteenth Amendment rights to be secure against unreasonable searches and seizures, (2) his Fifth Amendment rights not to be deprived of life, liberty or property without due process of law, and (3) his Fourteenth Amendment right to equal protection of the laws. Second Amend.Comp. ¶ 50.

Plaintiff alleges that defendant was acting "under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of New York, the city and County of New York and under the authority of their offices as Peace Officers of a Public Authority and corporation duly organized and existing pursuant to said laws, rules and regulations." Second Amend.Comp. ¶ 38.

Although plaintiff combines all of his § 1983 claims into a single cause of action, his fifth, the Court will analyze them separately.

**1. *Fourth Amendment Search and Seizure***

■ Paragraph 39 of plaintiff's proposed second amended complaint asserts that he "was intentionally ... arrested and confined by Metro–North employee and New York Peace Officer ... Coppola without probable cause...." Defendant concedes that, due to Coppola's status as a New York Peace Officer, plaintiff's proposed amended complaint sufficiently alleges the state action element of a § 1983 claim based on his arrest. Def.Reply at 16 (citing *Merola v. National R.R. Passenger Corp.*, 683 F.Supp. 935 (S.D.N.Y.1988); *see also Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406 (2d Cir. 1990). Defendant does not otherwise attack this claim, except on the basis that it would not survive a motion for summary judgment. Def.Reply at 20–24. As noted above, the

Court need not consider the merits of the claim on a motion to amend.

**2. *Remaining § 1983 Claims***

■ Defendant argues that in paragraphs 40–49 of his proposed second amended complaint, plaintiff has failed to allege sufficiently that defendant was acting under color of state law when it allegedly caused him to be prosecuted criminally, discharged him and published the allegedly libelous letter.

Private conduct qualifies as state action when "[t]he State has so far insinuated itself into a position of interdependence with [the private party] that it must be recognized as a joint participant in the challenged activity," *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 725, [81 S.Ct. 856, 862, 6 L.Ed.2d 45] (1961), or when "there is a sufficiently close nexus between the State and the challenged action" that the private party's action "may be fairly treated as that of the State itself," *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, [95 S.Ct. 449, 453, 42 L.Ed.2d 477] (1974). *Hadges, supra*, 918 F.2d at 1081.

By alleging merely that defendant is a corporation organized under various New York laws, including the Public Authorities Law, plaintiff has failed to allege facts sufficient to satisfy either the "symbiotic relationship" test under *Burton* or the "close nexus" test under *Jackson*.

In *Burton*, state action was found in the discriminatory actions of the owner of a private restaurant that leased space in a state-owned building. The Supreme Court found a symbiotic relationship in that the state owned the land and building, paid the building's construction and maintenance costs, and had a direct financial interest in the restaurant's success because of the adjacent parking lot owned by the state and used by restaurant patrons. In addition, the state had dedicated the building for public purposes, and the tenant benefitted indirectly from its tax-exempt status. 365 U.S. at 723–24, 81 S.Ct. at 860–861.

In a recent case, the Second Circuit held that the employment practices of a privately owned racetrack licensed by the state of

New York did not qualify as state action under the "symbiotic relationship" test. *See Hadges, supra.* The Court distinguished *Burton* on the grounds that: (1) the state did not have a proprietary interest in the privately owned racetrack, (2) the state did not own a neighboring, interlinked business that might create a direct financial stake in the racetrack, and (3) the racetrack did not enjoy tax-exempt status. *Id.,* at 1082. Thus, while not explicitly limiting *Burton* to its facts, the Second Circuit required a detailed showing of financial links between the state and the enterprise at issue.

In the instant case, plaintiff has not alleged any facts that even remotely indicate the type of state participation and interdependence envisioned by the "symbiotic relationship" test. Similarly, plaintiff's statement that defendant is organized under the New York Public Authorities is insufficient to allege the existence of the type of "close nexus" discussed in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974).

"While the symbiotic relationship test focuses on the state's overall relationship with the private actor, the close nexus test specifically examines the state's link to the challenged action." *Hadges, supra,* 918 F.2d at 1082. In *Jackson,* a privately owned utility was sued under § 1983 by a customer whose account it had terminated. Plaintiff claimed that the termination constituted state action because of the state's extensive regulation of the utility, the monopoly status that the state had allegedly conferred on the utility, the essential nature of the utility service, and the state's alleged approval of the utility's termination practice. *See Jackson,* 419 U.S. at 351–55, 95 S.Ct. at 453–56. The Court found that the state's involvement in the utility's affairs was insufficient to create a "close nexus" between the utility and the state such that "the action of the [utility] may be fairly treated as that of the State itself." *Id.* at 351, 95 S.Ct. at 453. The Court stated that "[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Id.* at 350, 95 S.Ct. at 453.

Plaintiff does not allege any facts that might indicate that the state was somehow involved in defendant's decision to terminate or file charges against plaintiff or in the alleged publication of the letter. *Compare Hadges, supra,* 918 F.2d at 1083 (racetrack's denial of employment to jockey not state action where racetrack did not act at behest of state official and was not enforcing violation of state racing law) *with Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589, 599 (3rd Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 814 (1980) (state action exists if state official "personally and actively participated" in racetrack's decision to expel driver)).

Consequently, because plaintiff has failed to allege facts that might fulfill either the "symbiotic relationship" test or the "close nexus" test, the Court agrees with defendant that he has failed to allege that defendant was acting "under color of law" for any of his § 1983 claims other than that based on his arrest. Because the Court has found a failure to plead this essential element, it need not consider at this time any other possible deficiencies in plaintiff's pleading of these claims.

Accordingly, while permission is granted to file a second amended complaint, permission to file the second amended complaint attached to the notice of cross-motion is denied. Plaintiff is instructed to prepare a second amended complaint consistent with this opinion. Such a second amended complaint shall be filed within twenty (20) days of this opinion.

### III. *Sanctions*

Not only has the Court found merit in a number of plaintiff's arguments, but plaintiff has prevailed on several points. Therefore, there is no occasion for the Court to impose sanctions pursuant to Fed.R.Civ.P. 11, and defendant's request for an award of attorney's fees is denied.

### CONCLUSION

For the reasons stated above, defendant's motion to dismiss the complaint is granted in part and denied in part.

Plaintiff's second, third, fourth, fifth, sixth, seventh, ninth, tenth, and eleventh causes of action, and that portion of his eighth cause of action based on his termination and criminal prosecution, are dismissed with prejudice.

Plaintiff's first and eighth causes of action, excepting that portion based on his termination and criminal prosecution, are dismissed without prejudice.

Plaintiff's motion to amend his complaint is granted. Plaintiff shall serve and file a second amended complaint consistent with this opinion and order within twenty (20) days.[5]

Defendant's request for the imposition of sanctions is denied.

The parties shall appear for a regular status conference in this matter on March 1, 1991, at 2:00 p.m. in Courtroom 36 of the United States Courthouse, New York, New York.

SO ORDERED.

---

5. The parties are reminded by the Court that the filing of an amended complaint that is inconsistent with a court order limiting the scope of the claims may be considered a violation of Fed.R. Civ.P. 11. Similarly, the filing of a supplementary motion to dismiss portions of an amended complaint previously specifically upheld by the Court can be considered a Rule 11 violation.