101 F.3d 1393
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Gabriel STANESCU; Stella Stanescu, Plaintiffs-Appellants,
v.
AETNA LIFE AND CASUALTY INSURANCE CO., Defendant-Appellee.
 No. 96-7071.
 United States Court of Appeals,
Second Circuit.
 Aug. 16, 1996.
 
 Ronald L. Lepine, Joseph A. Ciaffaclione, Lepine & Associates, West Hartford, CT, for Appellants.
 Dion W. Moore, (Williams, Cooney & Sheehy, Bridgeport, CT), for Appellee.
 Present: CALABRESI, PARKER, Circuit Judges. POLLAK, Senior District Judge.*
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the District of Connecticut (Nevas, J.), it is hereby
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 Gabriel and Stella Stanescu appeal from a judgment of the United States District Court for the District of Connecticut (Nevas, J.) granting a 12(b)(6) motion to dismiss entered on December 22, 1995.
 
 
 1
 The district court accepted the following facts as true for purposes of the 12(b)(6) motion: Gabriel Stanescu suffered a work-related injury to his back. He subsequently filed a claim for workers' compensation benefits and initially received them through his employer's workers' compensation carrier, Aetna. He underwent surgery, and after the surgery Aetna refused to pay compensation benefits in a timely manner and refused to authorize some treatments recommended by Stanescu's doctors. Aetna refused to settle Stanescu's claim and referred it to the Connecticut Second Injury Fund. Stanescu has experienced physical and psychological difficulties as a result of Aetna's action.
 
 
 2
 The court granted the defendant's motion to dismiss on the ground that the facts alleged failed to demonstrate that Aetna had acted under the color of state law, and therefore that the Stanescus had failed to state a claim under § 1983. On appeal, the Stanescus challenge this ruling.
 
 
 3
 We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6) de novo. See Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir.1996). In doing so we take all well-pleaded factual allegations as true, and we draw all reasonable inferences in favor of the plaintiffs. Id. at 53. While this pleading standard is relatively easy for plaintiffs to meet, bald assertions and conclusions of law are not sufficient. See Albert v. Carovano, 851 F.2d 561, 572-573 (2d Cir.1988) (in banc).
 
 
 4
 A § 1983 suit must be dismissed if the defendants did not act under the color of state law. See 42 U.S.C.A. § 1983. All conduct that satisfies the state-action requirement of the Fourteenth Amendment satisfies the § 1983 under-the-color-of-state-law requirement. Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982). Appellants bear the burden of proving state action. Hadges v. Yonkers Racing Corp., 918 F.2d 1079, 1083 n. 3 (2d Cir.1990), cert. denied, 499 U.S. 960 (1991).
 
 
 5
 The Stanescus argue that two aspects of the Connecticut Workers' Compensation Act ("the Act") make Aetna's conduct state action.
 
 
 6
 First, they argue that because under state law the Workers' Compensation Act is the exclusive remedy available to the Stanescus, it is the state that enabled Aetna to deprive the Stanescus of their rights. They note (1) that the Connecticut Workers' Compensation Act, Conn.Gen.Stat. §§ 31-274 to 31-555a, makes his employer's insurance carrier (in this case Aetna), Stanescu's exclusive source of relief for injuries that occurred to him on the job, and (2) that this exclusive power enabled Aetna to mistreat Stanescu.
 
 
 7
 These facts are, however, insufficient to support the conclusion that Aetna is a state actor. As the appellant acknowledges, a private actor is not made a state actor merely as a result of state regulation, even if that regulation is extensive and detailed. Jackson v. Metropolitan Edison Co., 419 U.S. 345, 350 (1974). To determine whether specific regulatory control turns the decisions of a private entity into state action, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Jackson, 419 U.S. at 351. That a regulatory scheme grants a private actor a monopoly is not sufficient to demonstrate a "close nexus"; the appellant must show that the alleged state action is closely related to the actor's monopoly status. Hadges, 918 F.2d at 1084. The facts alleged by the appellants do not show the required connection between Aetna's monopoly status and its alleged wrongful action in denying benefits. There is nothing, for example, in the Stanescus' allegations to suggest that the state-granted exclusivity in any way affected the decisions Aetna made.
 
 
 8
 Second, appellants contend that the relationship between the Second Injury Fund and Aetna is sufficient to make Aetna a state actor. They assert (1) that the state-created and administered Second Injury Fund replaces Aetna as a party to workers' compensation proceedings when a pre-existing injury exists or when an insurance carrier is unable to pay a claim, and (2) that when the Second Injury Fund replaces Aetna, it "steps into the shoes" of the insurance carrier, and adopts Aetna's "rights, privileges and defenses." They conclude that this relationship between the Second Injury Fund and Aetna creates "joint participation" sufficient to establish state action.
 
 
 9
 As described by the appellants, the relationship between the Second Injury Fund and Aetna does not exhibit the kind of interdependence sufficient to constitute state action. The state had no direct financial interest in Aetna's success. Nor was Aetna a lessee of state property. See Burton v. Wilmington Parking Authority, 365 U.S. 715 (1961) (holding a private restaurant that leased state land to be a state actor because of financial interdependence); Jackson, 419 U.S. at 357-58 (limiting the holding in Burton to lessees of public property).
 
 
 10
 The relationship between Aetna and the Second Injury Fund also fails to show that Aetna "sufficiently received the imprimatur of the State so as to make [its decisions] 'state' action." Blum v. Yaretzky, 457 U.S. 991, 1003 (1982). The appellants do not assert that the State is directly or indirectly "responsible for the specific conduct" of Aetna. Id. at 1004. Nor have they claimed that the state "exercised coercive power" or significantly encouraged the conduct, overtly or covertly, so that the action "must in law be deemed to be that of the State." Id. The appellants have simply alleged that the state and private insurer may both play a role in providing benefits under the scheme. As the appellants describe the process, the Second Injury Fund may on occasion replace the insurance carrier, but only after the carrier has made its decisions and committed acts like those complained of by the appellants.[1]
 
 
 11
 Since neither of the appellants' arguments shows sufficient state involvement to make Aetna's decisions about Stanescu's benefits and medical treatment state action, we affirm the district court's judgment.
 
 
 
 *
 The Honorable Louis H. Pollak, Senior District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Because the appellants allege no facts indicating that the state reviews Aetna's decisions, we do not need to consider whether such state agency review of Aetna's actions might be enough to make an insurance carrier a state actor in the context of a workers' compensation scheme. Compare Baksalary v. Smith, 579 F.Supp. 218, 230-31 (E.D.Pa.1984) (holding state procedural review central to determination of state action) with Barnes v. Lehman, 861 F.2d 1383, 1387 (5th Cir.1988) (declining to hold procedural review sufficient to create state action)